IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 17-310 |
| | : | |
| ELIO OSIRIS SOTO, | : | |
| a/k/a "Elio Osiris Soto Castillo" | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Christopher Diviny, Assistant United States Attorney, hereby files, its sentencing memorandum.

Preliminary Statement

There is little question that the defendant's crimes are serious. Defendant Elio Osiris Soto, a convicted felon who was previously deported from the United States, pled guilty in this case to the offense of illegal reentry after deportation. His illegal reentry followed his conviction for an aggravated felony, delivery of a controlled substance, cocaine, in Hazleton, Pennsylvania. Because the defendant is an aggravated felon, and because his prior deportation order has not deterred him from illegally re-entering the United States and committing further crimes, the government recommends a sentence within the advisory guideline range of 24 to 30 months imprisonment.

Background

A.   Factual Background

The defendant was deported from the United States on August 19, 2014, following his conviction on May 8, 2014, in Luzerne County, Pennsylvania, of delivery of a

controlled substance, cocaine, in Hazleton.[1]  Despite being warned that reentry into the United States without proper permission was a separate crime punishable by up to 20 years imprisonment, the defendant nevertheless reentered the United States, according to him, in April 2016.  On July 19, 2016, Soto attempted to secure a Pennsylvania driver's license under a false identity, Osbaldo Clemente-Torres.   This effort led to state forgery charges to which he pleaded guilty on May 8, 2017, in Dauphin County, and was sentenced to 6 to 12 months incarceration with immediate release to Immigration Customs Enforcement ("ICE").

Once in ICE custody on May 8, 2017, defendant gave a Mirandized statement in which he admitted his real identity as Elio Osiris Soto.  He admitted that he was a native and citizen of the Dominican Republic and that he had been deported from the United States on August 19, 2014.  He told ICE officers that he illegally reentered the United States through Mexico into Texas near Rio Grande, Texas, on approximately April 17, 2016 without inspection or admission by an immigration official.  He did not obtain permission from the Attorney General or the Secretary of Homeland Security to reenter the United States after his deportation.  In addition, he admitted to ICE officers that a friend gave him identity documents in the name of Osbaldo Clemente-Torres but he maintained that he did not ask whether Clemente-Torres was a real person.

---

[1] On May 13, 2008, Hazleton City Police in Pennsylvania arrested Soto and charged him with four counts of possession with intent to deliver a controlled substance, cocaine, two counts of possession of cocaine, and two counts of criminal use of a communication facility.  Soto fled from Hazleton and was a fugitive for five years.  On May 21, 2013, New York City Police arrested Soto for aggravated unlicensed operation of a motor vehicle and false personation.  On June 21, 2013, Soto pleaded guilty to aggravated unlicensed operation of a motor vehicle and was sentenced to 10 days confinement.

B.       Procedural History

On June 8, 2017, a federal grand jury returned a one-count indictment charging defendant Elio Osiris Soto with illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a), (b)(2), all arising from his reentry into the United States following his deportation to the Dominican Republic after sustaining a conviction in Pennsylvania for delivery of a controlled substance, cocaine, an aggravated felony. On July 12, 2014, the defendant entered an open guilty plea to the illegal reentry after deportation charge in the indictment.

## Sentencing Calculation

A.       Statutory Maximum Sentence

The maximum sentence for a violation of 8 U.S.C. § 1326(a) and (b)(2) is 20 years imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

B.       Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows: The base offense level for the illegal reentry offense is 8, pursuant to U.S.S.G. § 2L1.2(a). The offense level is increased 6 levels because the defendant was convicted of a felony drug trafficking offense for which his sentenced exceeded 13 months and which occurred before his first order of removal, pursuant to U.S.S.G. § 2L1.2(b)(2)(C). Also, the offense level is increased 4 levels because the defendant was convicted of a forgery in Dauphin County, a felony offense, after he was deported from and returned to the United States, pursuant to U.S.S.G. § 2L1.2(b)(3)(D). As a result of his guilty plea, the offense level is decreased by 3 levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b). The total

offense level is, therefore, 15. The defendant has a total of 5 criminal history points, placing him in criminal history category of III. The recommended guideline range is 24 to 30 months' imprisonment.

## Analysis of Sentencing Factors

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that the Court should accept the calculation of the advisory guidelines as set forth above, review all other factors, and impose a sentence of imprisonment within the guidelines.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing factors set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).

A.   The nature and circumstances of the offense and the history and characteristics of the defendant.

    1.   The nature and circumstances of the offense

The nature and circumstances of this offense are serious.  After having been convicted of drug dealing, the defendant was deported from this country.  He returned despite being told that this would constitute a new crime.  His criminal conduct continued upon his return when he tried to secure an identification document under a false identity.  The defendant's criminal history, his concealment of his identity, and his disregard for the laws of this country place his crime squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, 18 U.S.C. § 3553(a)(1), counsels in favor of a sentence within the guidelines range.

    2.   The history and characteristics of the defendant

Defendant reentered this country illegally and sought to assume a false identity to secure a Pennsylvania driver's license.  The defendant is 43 years old, born on September 24, 1973.  The defendant has been convicted of dealing cocaine in Hazleton, Pennsylvania, of aggravated unlicensed operation of a motor vehicle in New York City, and of forgery in Dauphin County, Pennsylvania.

B.	<u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.</u>

As described above, the defendant engaged in a very serious offense, reentering the country after deportation following a conviction for drug dealing. After illegally returning to this country he attempted to secure an important identification document based on an assumed identity. The defendant must be punished for the harm he has caused. An appropriate guideline sentence properly reflects these considerations and communicates to the defendant and society that the justice system will not tolerate this type of criminal behavior.

C.	<u>The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.</u>

A guidelines sentence as requested by the government is necessary to deter other potential criminals and to protect the public from further criminal activity of the defendant. This type of criminal behavior is all too common in our society, and those who are inclined to engage in it must be deterred by the possibility of receiving a serious sentence. The defendant's actions and history show that he must be deterred from engaging in this type of activity. A guidelines sentence will achieve this objective.

D.	<u>The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." <u>Id.</u> § 3553(a)(2)(D).

E.  <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.</u>

While the Sentencing Guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of <u>Booker</u> that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, <u>helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary</u>." <u>Booker</u>, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the <u>Booker</u> Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. <u>Id.</u> at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" <u>Cooper</u>, 437 F.3d at 331 (quoting <u>United States v. Mykytiuk</u>, 415 F.3d 606, 608 (7th Cir. 2005)).

<u>United States v. Ricks</u>, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process" in order to assure fair, proportionate, and uniform sentencing of criminal offenders. <u>Gall</u>, 552 U.S. at 50 n.6.

As Congress has codified, it is part of our sense of justice that similarly situated defendants should be given similar sentences. The Sentencing Guidelines provide a

recommended sentencing range so that similarly situated defendants receive similar punishment. This Court should impose a sentence within the guideline range.

F.	The need to provide restitution to victims.

Restitution is not an issue in this case.

## Conclusion

The defendant committed a serious crime.   For all the reasons set forth above, this Court should accept and consider the properly calculated guideline range and impose a sentence of imprisonment within the guideline range.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


/s Christopher Diviny
CHRISTOPHER DIVINY
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic filing upon:

        Maranna J. Meehan, Esquire
        Federal Community Defender Office
        601 Walnut Street, Suite 540 West
        Philadelphia, PA 19106


        /s   Christopher Diviny
        CHRISTOPHER DIVINY
        Assistant United States Attorney

DATE: August 30, 2017